JUSTICE LEAPHART,
dissenting.
¶29 I dissent as to Issue One and would not reach Issue Two.
¶30 The Court concludes that Pengra’s facial challenge to § 2-9-303, MCA, was not properly raised below and is thus not ripe for appellate review. The Court reasons that Pengra did not raise this allegation before the District Court. In so concluding, the Court has elevated form over substance.
¶31 In the District Court proceeding, Pengra filed a motion invoking the right to privacy and sought to seal the settlement documents. In his brief in support of the motion he argued that: “The legislature cannot take away a person’s personal privacy interest by statutory edict [referring to § 2-9-303, MCA]. The Constitution of Montana protects an individual’s privacy and makes it paramount.” In response, the media invoked the clear disclosure requirements of § 2-9-303(2), MCA, which states:
(2) All terms, conditions, and details of the governmental portion of a compromise or settlement agreement entered into or approved ... are public records available for public inspection.
¶32 Although Pengra did not recite the magic word “unconstitutional,” he unequivocally asserted the constitutional right of privacy in the face of the above statute which abrogates any such right without even a pretense of balancing the competing interests. This Court ignores the obvious when it suggests that the District Court was not *285 clearly presented with the issue of whether the statute is constitutional.
¶33 Furthermore, in his opening brief on appeal, Pengra argues:
By not going to jury trial and receiving a public verdict these people protected their privacy as many citizens do under similar circumstances. At the time they entered the settlement negotiations or at the time they filed suit for the minor child and the father they presumably knew not only about the statutory requirement of disclosure. They also reasonably knew constitutional and statutory rights, including their important right to pursuing [sic] and that where a statute is unconstitutional on its face oras applied they can be protected. [Emphasis added.]
¶34 It is beyond me how a court, confronted with one litigant asserting a constitutional privacy interest in a document, opposed by another litigant relying on a statute which purports to defeat that right of privacy can conclude that the constitutionality of the statute is somehow not at issue. Although the matter could have been more forcefully pleaded, the constitutionality of § 2-9-303, MCA, was clearly the crux of this dispute from the beginning.
¶35 Having turned a blind eye to the facial challenge to the statute, the Court then goes on to address the “as-applied” challenge to § 2-9-303, MCA. The Court cites our decision in Missoulian v. Board of Regents (1984), 207 Mont. 513, 675 P.2d 962, for the analysis to be employed when addressing conflicts between the Article II, Section 9, right to know, and the Article II, Section 10, right of privacy. In Missoulian, we enunciated a two-step process. First, it must be determined whether the person claiming the right of privacy has a subjective expectation of privacy and if so, whether society is willing to recognize that expectation as reasonable. Missoulian, 207 Mont. at 522, 675 P.2d at 967 (citation omitted). If both of these prerequisites are met, then the court must engage in a balancing test to determine whether the privacy interest exceeds the merits of the public disclosure. Having properly stated the test, the Court then “proceed[s] to weigh the Pengras’ rights to privacy, insofar as they are recognized by society, against the public’s right to know the terms of the settlement agreement.”
¶36 The obvious flaw in the Court’s “weighing” of the competing interests in the present case is that the statute in question forecloses any weighing process. Section -303 does not state that settlement agreements with the State are public documents if the interests of *286 privacy outweigh public disclosure. Rather, it establishes an absolute rule: all terms and details of settlement with the State “are public records available for public inspection.” The traditional balancing test has been preempted by a legislative enactment under which the right to know absolutely trumps the right of privacy.
¶37 Given the absolute statutory preference accorded the right to know, the Court’s discussion as to the inadequacy of the factual record to support Pengra’s claim to a subjective expectation of privacy is completely superfluous. If Pengra had produced fifteen witnesses with five days of testimony about his expectation of privacy it would make no difference. Under § -303 the settlement documents would be public documents irrespective of what the record demonstrates regarding Pengra’s subjective expectation of privacy. The Court’s faulting of Pengra for not timely filing the Emerson affidavit as part of the record and for not taking other steps to keep the lawsuit private is a complete red herring. These so-called deficiencies have no relevancy to the analysis of § -303 and merit no further discussion.
¶38 The fact that § -303 preempts any “balancing” of competing interests proves the very point that the Court has conveniently side-stepped. That is, that the statute is not just unconstitutional as applied. It is unconstitutional on its face. It gives an absolute preference to one constitutional guarantee, the right to know, to the exclusion of another, the right of privacy. A legislative enactment which elevates the right to know to an absolute rule without any consideration of the individual’s right of privacy cannot pass constitutional muster.
The Missoulian Analysis is Self-Defeating when applied to a Legislative Preference:
¶39 Even assuming arguendo that § -303 allowed for a balancing of interests, it makes no sense whatsoever to apply the two-part Missoulian construct to a legislative enactment which elevates one right over the other in an absolute manner. The media argues, and the Court agrees, that, in the face of the legislative enactment, the Pengras along with the rest of the public were on notice that settlements with the State are public. Thus, this Court holds there could be no subj ective expectation of privacy. Why it is that the public’s subj ective expectation is defined by the legislative notice of § -303 to the exclusion of the superior constitutional notice of Article II, Section 10’s right of privacy remains a mystery.
¶40 As to the second Missoulian inquiry: whether society is walling to recognize the Pengras’ privacy right, the media argues that, in *287 adopting § -303, the legislature has spoken and plainly foreclosed any argument that society would recognize a right of privacy in a settlement with the State. Unfortunately the Court buys into this argument without considering the implications of its decision. Under the Court’s present logic, the legislature can, by passing a statute, defeat both any subjective expectation of privacy and any contention that society would recognize as reasonable an expectation of privacy. Having negated both these propositions in one fell blow, the legislature has obviated any need for a judicial weighing of the competing interests under the Missoulian analysis. Under this Court’s reasoning, the mere fact of enactment completes the constitutional analysis so that once the legislature speaks, the courts no longer have any role in scrutinizing whether the enactment comports with the Constitution.
¶41 In short, the Court has handed the Article II, Section 10, right of privacy to the legislature on a silver platter and said do with it what you will, it’s in your hands. If, in its wisdom, the legislature next passes a statute which says that all medical and tax records of litigants in the State court system are public records available for public inspection, so be it. In the face of such a statute, an individual could not expect privacy nor would society recognize as reasonable such an expectation. In the final analysis, the courts are rendered helpless bystanders, powerless to require any deference to the individual right of privacy as envisioned by the framers of the Constitution.
¶42 I continue to value the public’s right to know and recognize that there will be instances where that right will conflict with the right of privacy. I cannot, however, accept the Orwellian proposition that the legislature can, with no judicial balancing of the competing interests allowed, subordinate the rights of individuals to the rights of the public.
¶43 I would hold that § 2-9-303, MCA, is unconstitutional on its face in that it creates an absolute preference for the right to know without any consideration whatsoever for the Pengras’ constitutional right of privacy. Tiffany Pengra’s loss of her mother is a personal tragedy of the highest order. That she is deemed to have waived her right of privacy if she seeks recompense for that loss is a constitutional tragedy.
JUSTICE TRIEWEILER and JUSTICE HUNT join in the foregoing dissenting opinion.